IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TERA HARRIS,

        Plaintiff,                                    No. 3:15-cv-00853-HZ

      v.                                          OPINION & ORDER

CITY OF PORTLAND, et al.,

        Defendants.

Tera Harris
2305 SE 130th Ave., Apt. B
Portland, OR 97233

    Pro Se Plaintiff

HERNÁNDEZ, District Judge:

    On May 19, 2015, Tera Harris filed an application to proceed *in forma pauperis* ("IFP") [1], a complaint [2], and a motion for appointment of counsel [3]. In an Opinion & Order [7], the Court granted Harris's application to proceed IFP, but denied her motion for counsel and

1 - OPINION & ORDER

dismissed her complaint with leave to amend. On August 6, 2015, Harris filed an Amended Complaint [9] which addressed the deficiencies in her initial filing. Now, Harris has filed another motion for appointment of pro bono counsel. She writes that she is unable to pay the cost of an attorney. She states that she has "exhausted [a lot] of resources trying to find my own attorney and have been turned down by several firms." Motion for Appointment of Pro Bono Counsel ("Mot.") at 1. Her motion is denied because she has demonstrated the ability to articulate her allegations, her claims are not legally complex, and it is unclear at this stage how likely her case is to succeed on the merits.

## STANDARDS

A district court may request an attorney to represent any person unable to afford counsel. 28 U.S.C. § 1915(e)(1). There is not, however, a constitutional right to counsel in a civil case, and 28 U.S.C § 1915 does not "authorize the appointment of counsel to involuntary service." United States v. 30.64 Acres of Land, 795 F.2d 796, 801 (9th Cir. 1986). The decision to appoint counsel is "within the sound discretion of the trial court and is granted only in exceptional circumstances." Agyeman v. Corrections Corp. of Am., 390 F.3d 1101, 1103 (9th Cir. 2004) (quotation marks and citation omitted). A finding of exceptional circumstances depends on two factors: the plaintiff's likelihood of success on the merits, and the plaintiff's ability to articulate his or her claims in light of the complexity of the legal issues involved. Id. Neither factor is dispositive and both must be viewed together before ruling on a request for counsel. Palmer v. Valdez, 560 F.3d 965, 970 (9th Cir. 2009) (citation omitted).

## DISCUSSION

Harris's amended complaint details three separate encounters she has had with various officers of the City of Portland Police Bureau since May of 2013. Her first claim alleges that, on

2 - OPINION & ORDER

May 20, 2013, Officers Keller and Maynard "wrongfully use[d] excessive force" on her at her residence. Amended Complaint ("Amd. Compl.") at 3. She claims the officers approached her while she was moving out of her apartment and asked for her identification. When she did not comply, "one of the officers grabbed [her] by the arm as hard as he could" and she "started screaming from the pain." The other officer "grabbed [her] other arm and placed both in handcuffs and dragged [her] to the police car" and placed her in the back. At that time, a third officer arrived on the scene and allegedly asked the other officers "what are they doing here that it wasn't their beat." The third officer released Harris and told her to "get in the uhaul and drive away." Harris claims, however, that she was unable to "put the key in the ignition" for almost forty-five minutes because she was in pain. She subsequently went to the hospital and was apparently diagnosed with a "rotator cuff tear and a . . . superior labral anterior and posterior tear from the officer's use of excessive force." Harris states she has had surgery and therapy for the injuries and that her doctors have told her she "will probably be disabled for the rest of [her] life." Amd. Compl. at 3.

Harris's second claim alleges that, on July 5, 2014, Officers Bruders and Thurman wrongfully arrested her "of the false charges." Amd. Compl. at 4. Harris describes a domestic incident at her sister's house involving some screaming, finger pointing, and eventually a fight, though Harris claims she "was not a part of a the fight . . . I was telling them to stop[.]" Someone in the vicinity called the police; when Officer Bruders arrived on the scene, Harris claims she was "sitting in my car." She alleges Officer Bruders said "nice seeing you again Mrs. Harris." She writes that she "had problems with Officer Bruders before with a civil suit in 2009 for excessive force." She claims that Officer Bruder arrested her for resisting arrest and disorderly conduct—Harris insists she was simply "seated in my car." Amd Compl. at 4–5.

3 - OPINION & ORDER

Finally, Harris's third claim alleges that on or about July 14, 2014, Officer Thorsen wrongfully arrested her on "false charges." Amd. Compl. at 4. She states Officer Thorsen "pulled [her] over for running a red light," took her ID, and placed her under arrest for drunk driving. Harris claims she "doesn't drink" and that she tried to explain that to Officer Thorsen. Harris alleges that Officer Thorsen "slammed [her] head on the car then took [her] to the east precinct . . . where they proceeded to beat [her] up." She claims she requested medical attention for "the bruises and [knots] on [her] head and the pain in [her] arm." Then, she alleges she "blacked out" and woke up to "2 paramedics who were taking blood" from her arm. She claims she was taken to the hospital, but does not remember what happened. Amd. Compl. at 4–5. Later, an unidentified officer "proceeded to take [her] to booking" where she stayed until appearing in front of a judge on the following Monday. The judge apparently ordered her released at 2:00 p.m. that day, but she was still in custody at approximately 11:00 p.m. When she requested to be released, she was told to "go back and sit down," and when Harris asked again about her release, she alleges that Officers Hudson and Muth "forced [her] to the ground," and one of the officers "jumped . . . down on [her] back with his knees then started "grinding his knees" into her back. Amd. Compl. at 5. She claims the officers placed her in the "hole" for approximately thirty days, during which the officers did not let her shower or use the phone, and they fed her "spoiled sack lunches three times a day." She claims the police "tazed [her] three times and force fed [her] medication and put [her] in a restraint chair." Harris claims her "attorneys were calling to speak to" her but were denied access. She claims this incident caused her to lose her "home and car and suffer . . . what no human should have to endure." Amd. Compl. at 5.

At this stage in the proceeding, Harris's request for appointment of counsel is denied. She has pled sufficient facts for the Court and the various defendants to be on notice of her claims

4 - OPINION & ORDER

and her asserted grounds for relief. She was able to follow the Court's instructions for filing an amended complaint, and able to investigate the names of the officers involved in these encounters. The legal issues are not complex. Harris has done all that she must do to start the case—she has filed a sufficient complaint and issued summonses to the named defendants. Once served, it will be up to the defendants to take the next step. Harris must, at least for now, do her best to respond to the defendants' next action in this case. To start, Harris should review the District of Oregon's website for some helpful information about "Representing Yourself in Court," which is available at https://ord.uscourts.gov/index.php/2015-02-10-16-10-22/information-about-representing-yourself.

The Court emphasizes that it is sensitive to the challenges pro se plaintiffs face in bringing their own case in federal court, and notes that it has an "obligation . . . where the [plaintiff] is pro se, particularly in civil rights cases, to construe the pleadings liberally and afford the [plaintiff] the benefit of any doubt." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citation and quotation marks omitted). The Court will do its part to ensure that Harris's claims have a fair chance. But the Court is unwilling, on the basis of her current complaint, to assign a lawyer to her case for what is essentially "involuntary service" without compensation. 30.64 Acres of Land, , 795 F.2d at 801.

## CONCLUSION

For the reasons stated, Harris's motion for appointment of counsel [11] is denied.

IT IS SO ORDERED.

Dated this \_\_30\_\_ day of \_\_September\_\_, 2015.

_____
MARCO A. HERNÁNDEZ
United States District Judge

5 - OPINION & ORDER