IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TERA HARRIS,

        Plaintiff,

    v.

CITY OF PORTLAND POLICE
DEPARTMENT, et al.,

        Defendants.

No. 3:15-cv-00853-HZ

OPINION & ORDER

Thomas C. Patton
8 North Street, Suite 301
Lake Oswego, Oregon 97034

    Attorney for Plaintiff

1 - OPINION & ORDER

David A. Landrum
Office of City Attorney
1221 SW 4th Avenue, Suite 430
Portland, Oregon 97204

       Attorney for City Defendants

Jacqueline Sadker Kamins
Assistant County Attorneys
501 S.E. Hawthorne Blvd., Suite 500
Portland, Oregon 97214

       Attorneys for County Defendants

HERNÁNDEZ, District Judge:

       Plaintiff, Tera Harris, brings this action under 42 U.S.C. § 1983 against four Portland police officers and two Multnomah County Sherriff's deputies for violations of her Fourth Amendment rights. Defendants are Officers Lawrence Keller, Phillip Maynard, Robert Bruders, and Erick Thorsen (collectively "City Defendants") and Deputies Wendy Muth and Chris Hudson (collectively "County Defendants"). City and County Defendants separately move for summary judgment on all of Plaintiff's claims.

       Plaintiff's claims involve four separate encounters with law enforcement: (1) false arrest and excessive force claims against Keller and Maynard for detaining her when she refused to leave a house from which she had been evicted (hereinafter "eviction incident"); (2) a false arrest claim against Bruders who allegedly detained Plaintiff in response to a domestic disturbance report (hereinafter "domestic disturbance incident"); (3) false arrest and excessive force claims against Thorsen regarding his arrest of Plaintiff for allegedly driving under the influence of intoxicants ("DUII") (hereinafter "DUII incident"); and (4) following her arrest for the DUII charge, she claims that Deputies Muth and Hudson used excessive force on her when they

2 - OPINION & ORDER

physically restrained her at Multnomah County Detention Center ("MCDC") (hereinafter "MCDC incident").

For the reasons discussed below, City Defendants' motion for summary judgment is granted as to Maynard and Bruders. Further, the motion is granted as to Plaintiff's false arrest claim against Keller. City Defendants' motion is denied as to Plaintiff's excessive force claim against Keller, and false arrest and excessive force claims against Thorsen. County Defendants' motion for summary judgment is denied.

## BACKGROUND

### I.     Eviction Incident

Plaintiff leased a house in northeast Portland owned by Yan Cheng Chen and Yi Pei Chen (collectively the "Chens"). Yi Chen Decl. ¶ 2, ECF No. 68. Plaintiff repeatedly failed to pay rent and the Chens evicted her. Id. at ¶ 3. When Plaintiff did not comply with the court-ordered May 14th, 2013, move out date, Police escorted her from the house on May 17th and the locks were rekeyed. Sitka Chiu Decl. ¶ 4, ECF No. 69.

The Chens allowed Plaintiff all-day access to the house on May 19th to retrieve her belongings. Yi Chen Decl. ¶¶ 5–6. The Chens returned the following morning at 11:00 A.M. and unlocked the house for Plaintiff. Id. at ¶ 6. At that point, Plaintiff had nearly all of her belongings out of the house but a large amount of garbage remained. Id.

The Chens returned to the house at approximately 11:00 P.M. and found that Plaintiff had not finished retrieving her belongings and cleaning up the house. A U-Haul truck was backed up to the front door of the house and the truck's ramp was extended to the steps leading up to the covered porch. Id.; Steiner Decl., Ex. A, at 111–16, ECF No. 74. The Chens told Plaintiff that she must leave and Plaintiff began to yell at them. Yan Chen Decl. ¶ 6, ECF No. 67; Yi Chen

Decl. ¶ 6. The Chens waited for Plaintiff to leave for several minutes and called the Portland Police Bureau ("PPB") at approximately 11:00 P.M. Yi Chen Decl. ¶ 7.

PPB Officers Chad Steiner and Louis Seals arrived shortly thereafter. Steiner Decl. ¶ 4, ECF No. 74. Neither Steiner nor Seals are named defendants in this case. The Chens told Steiner that they owned the property, evicted Plaintiff, and allowed Plaintiff "all day" access for two days but that she had since become hostile and refused to leave. Id.

Officer Keller arrived minutes later and Steiner relayed to Keller what he had learned from the Chens. Keller Decl. ¶ 4, ECF No. 72; Steiner Decl. ¶ 5. Keller approached the house and stood between the truck and the front porch when Plaintiff emerged from the house's front door. Keller Decl. ¶ 7. Keller asked Plaintiff for her identification twice, she refused both requests. Keller also told Plaintiff that she had been evicted, was trespassing, and was subject to arrest. Id. at ¶ 7; Harris Decl. ¶ 4, ECF No. 100-1.

The parties differ in their descriptions of what happened next. Plaintiff contends that she turned away from the officers toward her belongings in the U-Haul when Keller grabbed her right arm and Steiner grabbed her left wrist. Harris Decl. ¶ 5. Keller states that Plaintiff attempted to go back into the house while Keller was talking to her. Keller Decl. ¶ 8; Steiner Decl. ¶ 7. Keller also stated that because Yi Chen had advised him that Plaintiff had previously locked the Chens out, that Keller hoped to avoid Plaintiff locking herself and others inside of the house. Keller Decl. ¶ 8. According to the officers, Keller grabbed Plaintiff's right hand while she grabbed the front door frame of the house with her left hand and attempted to pull free. Id. at ¶ 9. At that point, Keller tightly gripped Plaintiff's right hand and applied a control hold. Id. Steiner grabbed Plaintiff's left hand and removed it from the door frame. Steiner Decl. ¶ 7. The officers put Plaintiff's hands behind her back and handcuffed her standing up. Id. at ¶¶ 7–8. Harris stated

that she began to experience extreme pain in her right shoulder as she was handcuffed. Harris Decl. ¶ 5.

PPB Officer Leslie Pintarich arrived shortly thereafter and spoke with Plaintiff, de-escalated the situation, and released her. Pintarich Decl. ¶¶ 4–5, ECF No. 75. Plaintiff stated that she was unable to move her arm for several minutes and waited for the pain in her right shoulder to subside before leaving. Harris Decl. ¶ 5. Plaintiff and her family left the scene with the U-Haul truck shortly thereafter. Pintarich Decl. ¶ 6.

Officer Phillip Maynard is a named as a Defendant in the claim regarding this incident. Am. Compl. 2–3, ECF No. 100. However, Maynard states that he was the Acting Sargent for graveyard shift that May and was in no way involved in the incident and had no contact with Plaintiff. Maynard Decl. ¶¶ 2–5, ECF No. 76.

## II.  Domestic Disturbance Incident

On July 5, 2013, at approximately 11:30 P.M., Officer William Congdon responded to a call reporting a fight involving five or more people in southeast Portland. Congdon Decl. ¶ 3, ECF No. 77. Congdon was the first to respond and he observed Plaintiff, her sister Coleman, and "at least five juvenile females, all screaming at each other in the driveway in front of the residence." Id. The confrontation was not yet physical. Id. at ¶ 5. Congdon approached Plaintiff and asked her to separate from the group. Because Plaintiff began yelling at Congdon, he took her by the arm and directed her away from the group. Id. at ¶ 4. After questioning Plaintiff, Congdon told her to get into her car. Plaintiff complied but the argument with Coleman resumed. Plaintiff and Coleman approached each other while yelling. Id. at ¶ 7. Congdon intervened by putting himself between the two and Coleman directed her anger at Congdon. Id. Because

several juveniles surrounded Congdon and began yelling at him, he called for cover officers. Id. at ¶ 8.

Sergeant Jacob Clark, Officer Robert Bruders, and Lieutenant Jamie Resch responded. Only Bruders is a named Defendant in this case. Congdon observed that Plaintiff had a sling on her right arm; Plaintiff stated that it was broken. Congdon Decl. ¶ 10. Congdon arrested Plaintiff and with Clark's help, the two put a handcuff on her left wrist and attached it to the back strap of Plaintiff's sling. Congdon Decl. ¶ 10; Clark Decl. ¶ 4, ECF No. 78. Officer Bruders did not participation in arresting or handcuffing Plaintiff. Congdon Decl. ¶ 11; Clark Decl. ¶ 5; Bruders Decl. ¶ 7, ECF No. 79. Congdon and Clark placed Plaintiff into Congdon's patrol car. Congdon directed Bruders to put Coleman into his patrol car and he did so. Bruders Decl. ¶ 5.

Congdon charged plaintiff with: "(1) DV Harassment in violation of ORS 166.065; (2) Disorderly Conduct II in violation of ORS 166.025; and (3) Interfering with a Police Officer, in violation of ORS 162.247." Congdon Decl. ¶ 19; Congdon Decl. Ex. B, 1, ECF 77-1. Finally Congdon transported Plaintiff to MCDC while Resch transported Coleman in Bruders' patrol car. Congdon Decl. ¶ 17; Resch Decl. ¶ 4, ECF No. 80.

### III.  DUII Incident

On July 13, 2014, at approximately 11:53 P.M., Officer Julian Carroll pulled over Plaintiff in southeast Portland after seeing her run a red light and drive erratically. Carroll Decl. ¶ 3, ECF No. 82. Carroll observed Plaintiff's speech to be "slow and slurred, posture to be slumped, eyelids to be droopy, and she appeared on the verge of nodding off." Id. at ¶ 4. Carroll asked Plaintiff for her driver's license. Carroll observed that Plaintiff had difficulty locating her license and was moving very slowly. Id. at ¶¶ 5–6. Carroll then requested that an officer from the traffic division come to investigate a possible DUII; Officer Erick Thorsen responded. Id. at ¶ 6.

Officer Thorsen arrived at approximately 12:16 A.M. Thorsen Decl. ¶ 3, ECF No. 83. Carroll relayed his observations to Thorsen. Id. at ¶ 4. Plaintiff informed Thorsen that she had a broken rotator cuff, dislodged disc, and a "messed up leg." Id. at ¶ 5. Thorsen believed that she was too impaired to drive and asked her to take a Standard Field Sobriety Test ("SFST"). Id. at ¶¶ 6–7. Plaintiff allegedly refused to take the SFST and Thorsen administered a *Rohrs* admonishment.[1] Id. Plaintiff refused once more. Thorsen believed Plaintiff was intoxicated and arrested her. Id.

The parties' stories diverge regarding the arrest. Plaintiff contends that Thorsen slammed her head on to the trunk of the car, kicked her feet apart, and slammed her head down again. Harris Decl. ¶ 9. Carroll stated that he and Thorsen pushed Plaintiff against the back of the patrol car to gain leverage. Carroll Decl. ¶ 7. According to the officers, Thorsen took Plaintiff's right hand and Carroll took the left; Plaintiff tried to pull away screaming "police brutality." Thorsen Decl. ¶ 7; Carroll Decl. ¶ 7. Thorsen and Carroll were unable to get Plaintiff into the car. Thorsen Decl. ¶ 8. Carroll called for backup and Officers Timothy Larsen and Sarah Kerwin responded. Carroll Decl. ¶¶ 8–9. After a struggle, the four officers were able to get Plaintiff inside of the patrol car. Id. at ¶ 10.

Plaintiff was then driven to PPB East Precinct in Carroll's patrol car. Carroll Decl. ¶ 11. Upon Plaintiff's request, Carroll took her to a nearby hospital. Carroll Decl. ¶ 12. Kerwin and Larsen also went to the hospital. Id. Plaintiff was examined by a doctor and X-rayed. Kerwin Decl. ¶ 11. The doctor concluded that Plaintiff's arm was not broken but that there was some looseness in her right shoulder that appeared to "have been that way for a while." Carroll Decl. ¶ 12.

---

[1] City Defs.' Mot. Summ. J., 24 n.1 (citing State v. Koch, 267 Or. App. 322, 234, 341 P.3d 112, 114 (2014) ("The 'Rohrs admonishment' is a warning that refusal to submit to physical tests could be used against defendant in court.").

Thorsen obtained a search warrant for a blood draw and read it to Plaintiff at PPB East Precinct. Thorsen Decl. ¶ 13. An Emergency Medical Technician took the blood draw while Carroll, Thorsen, Kerwin, Larsen, and Anderson assisted with holding Plaintiff still. Carroll Decl. ¶ 14. Officer Congdon (who was also involved in the domestic disturbance incident) transported Plaintiff from PPB East Precinct to MCDC at 3:02 A.M. Congdon Decl. ¶ 20.

IV.  **MCDC Incident**

On July 14, 2014, Plaintiff was taken into MCDC custody for the DUII charge described above. Hudson Decl. ¶ 3, ECF No. 65. Plaintiff alleges that she was supposed to be released at 9:00 A.M. but that she was still in MCDC custody thirteen and a half hours later at 10:30 P.M. Harris Decl. ¶ 10. Plaintiff approached Muth's desk and asked when she would be released. Id. Muth ordered Plaintiff to sit down and be quiet or be put in an isolation cell. Muth Decl. ¶ 7, ECF No. 60; Hudson Decl. ¶ 8.

Plaintiff began complaining loudly and allegedly swore at Muth. Muth Decl. ¶ 6; Beeson Decl. ¶ 6, ECF No. 61. Plaintiff denies making those remarks. Harris Decl. ¶ 10. Muth and Hudson walked over to Plaintiff and ordered her to stand up, Plaintiff allegedly swore at Muth once more. Muth Decl. ¶ 7. Plaintiff also denies making those remarks. Harris Decl. ¶ 10. Muth and Hudson attempted to lift Plaintiff but she struggled and tried to pull away from them. Hudson Decl. Ex. 1, 3:00, ECF No. 89. Muth and Hudson stood Plaintiff up against the wall when Deputies Phil Hubert and Howard Beeson arrived. Muth Decl. ¶ 8.

Hudson claims that Plaintiff spit in his face and he stated to the other deputies "you spit in my face!" Beeson Decl. ¶ 7; Hudson Decl. ¶ 12; Muth Decl. ¶ 9; Hubert Decl. ¶ 7. Plaintiff denies spitting on Hudson or anyone else. Harris Decl. ¶ 11. No other deputy saw Plaintiff spit on Hudson. In response to the alleged spit, Muth and Hudson brought Plaintiff to the ground and

8 - OPINION & ORDER

pressed their knees on her back. Muth Decl. ¶ 10; Harris Decl. ¶ 11. Plaintiff alleges that Hudson grinded his knee into her back and that she pleaded that she could not breathe. Harris Decl. ¶ 11. Plaintiff also alleges that she was thrown down and kicked and kneed. Id. The deputies handcuffed Plaintiff and all four of them stood her up and walked her to the isolation cell. Hudson Decl. Ex. 1, 4:23. Medical staff evaluated Plaintiff and determined that she had not suffered any injuries. Blomdahl Decl. Ex. 1, 6–7, ECF No. 87.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting former Fed. R. Civ. P. 56(c)). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986).

"Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present specific facts showing a genuine issue for trial. Fed. Trade Comm'n v. Stefanchik, 559 F.3d 924, 927–28 (9th Cir. 2009) (internal quotation marks and citations omitted). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. Bias v. Moynihan, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing Celotex, 477 U.S. at 324). The substantive law governing a

claim determines whether a fact is material. Suever v. Connell, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. Earl v. Nielsen Media Research, Inc., 658 F.3d 1108, 1112 (9th Cir. 2011).

If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support his claim than would otherwise be necessary. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

## DISCUSSION

The Court makes the following rulings on Defendants' motions for summary judgment. City defendants' motion as to Keller is granted regarding Plaintiff's false arrest claim and denied regarding her excessive force claim. It is undisputed that Plaintiff refused to leave the Chens' premises after being informed by Keller that she was trespassing. Accordingly, Keller had probable cause to arrest Plaintiff. However, there is a genuine dispute as to whether Keller used excessive force. City Defendants' motion as to Maynard is granted. Plaintiff conceded that Maynard was mistakenly named as a Defendant in this case. City Defendants' motion as to Bruders is granted. Plaintiff cannot make out a false arrest claim against Bruders because the record demonstrates that he played no role in Plaintiff's arrest nor did he have any contact with Plaintiff during the domestic disturbance incident. City Defendants' motion as to Thorsen is denied. Plaintiff has raised genuine issues of material fact sufficient to survive summary judgment on her false arrest and excessive force claims against Thorsen.

County Defendants' motion is denied. While the video evidence shows much of the MCDC incident, it is incomplete. The controversial use of the knee press, the alleged grinding, and other conduct happened off-screen. There is a genuine dispute regarding the deputies' use of force.

**I.      Applicable Law**

   **A.      *Fourth Amendment: Probable Cause***

In conformity with the rule at common law, a warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed. See United States v. Watson, 423 U.S. 411, 417–424 (1976); Brinegar v. United States, 338 U.S. 160, 175–176 (1949). Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest. Maryland v. Pringle, 540 U.S. 366, 371 (2003). Devenpeck v. Alford, 543 U.S. 146, 152 (2004). "[E]venhanded law enforcement is best achieved by the application of objective standards of conduct, rather than standards that depend upon the subjective state of mind of the officer." Horton v. California, 496 U.S. 128, 138 (1990).

   **B.      *Fourth Amendment: Excessive Force***

Regarding excessive force claims, "the same standard of reasonableness at the moment applies: Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Graham v. Connor, 490 U.S. 386, 396–97 (1989) (internal quotation and citation omitted). The reasonableness analysis must consider "that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Id. at 397 "As in other Fourth Amendment contexts, however, the 'reasonableness'

11 - OPINION & ORDER

inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. The Graham factors include: "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id. at 396. "In each of these cases, the question was whether the totality of the circumstances justified a particular sort of search or seizure." Tennessee v. Garner, 471 U.S. 1, 8–9 (1985). Excessive force claims require courts to balance the "nature and quality of the individual's Fourth Amendment interests against the countervailing governmental interest at stake." Graham, 490 U.S. at 396 (quotation omitted). "Because this balancing nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom, we have held on many occasions that summary judgment . . . in excessive force cases should be granted sparingly." Lolli v. Cty. of Orange, 351 F.3d 410, 415–16 (9th Cir. 2003) (quotation omitted).

## II. City Defendants

### A. *Officer Keller*

#### (1) *Unreasonable Seizure*

Keller had probable cause to arrest Plaintiff. Under the totality of the circumstances test, the Court looks to the circumstances known to Keller and determines whether a prudent person would have concluded that there was a fair probability that Plaintiff had committed the offense charged. See Bailey v. Newland, 263 F.3d 1022, 1031 (9th Cir. 2001) (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)). Keller knew that the Chens owned the house and had evicted Plaintiff. Further, Keller knew that the Chens had allowed Plaintiff two full days to remove her belongings and that she had stayed after being asked to leave. Plaintiff argues that she was attempting to

vacate the premises and therefore any claim that she was trespassing "strains credulity." Pl.'s Resp. to City 4, ECF No. 99. However, under Oregon law, Criminal Trespass in the second degree includes a person who "enters or remains unlawfully . . . upon the premises." Or. Rev. Stat. ("O.R.S.") § 164.245. Plaintiff's initial lawful presence at the house became a trespass once she refused the Chens demand that she leave. Once Plaintiff refused Keller's order to leave, Keller had probable cause to arrest her for committing criminal trespass under Oregon law. Therefore, the Court grants summary judgment on Plaintiff's wrongful arrest claim regarding Keller.

      *(2)    Excessive Force*

Even if Keller had probable cause, the court must still determine whether he exercised excessive force on Plaintiff. Once more, in determining whether the use of force was objectively reasonable the court considers the Graham factors: the "severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." 490 U.S. at 396–97.

Looking at the facts in the light most favorable to Plaintiff, a reasonable juror could conclude that trespass in the second degree is not a severe crime and that Plaintiff posed little threat to the officers. The parties dispute the events surrounding Keller's use of force. Plaintiff alleges that she was in the U-Haul truck packing when Keller seized her. Keller and Steiner stated that Plaintiff was seized when she attempted to retreat back into the house. The officers further stated that Plaintiff grabbed onto the front door frame of the house with her left hand attempting to break from Keller. Keller gripped Plaintiff's hand tightly and applied a control hold. At that point, Steiner grabbed Plaintiff's left arm and the two officers were able to hand cuff Plaintiff while she stood.

The actual effects of the gripping and cuffing on Plaintiff are unclear. Plaintiff argued that her injuries included "a rotator cuff tear, a slap tear, and superior labral anterior, and posterior tears, requiring surgical repair." Pl.'s Resp. to City 5. Plaintiff states that after the incident she "was unable to move [her] arm to start her vehicle for several minutes while [she] waited for the pain in [her] right shoulder to subside." Harris Decl. ¶ 5. Plaintiff further states that her arm was in a sling on July 5th "as a result of the rotator cuff injury inflicted on my on May 20, 2013." Id. at ¶ 6. It is clear from the record is that Plaintiff suffered some sort of injury in her right shoulder. It is unclear is whether that condition pre-existed the May 20th, 2013, incident and whether it was exacerbated by that incident. The cause and extent of Plaintiff's injuries bear upon the question of how much force Keller used. At the summary judgment stage, the facts will be viewed in a light most favorable to the nonmoving party if there is a genuine dispute as to those facts. Courts sparingly grant summary judgment on excessive force claims because the objective reasonableness inquiry almost always requires a jury to sift through the facts. Plaintiff has demonstrated that a reasonable juror could find that Keller's use of force was excessive. City Defendants' motion for summary judgment on this claim is therefore denied.

  **B.**  ***Officer Maynard***

Officer Maynard is a named defendant in Plaintiff's Amended Complaint but the record indicates that he was not involved in the May 20th incident nor did he have any contact with Plaintiff. Maynard Decl. ¶¶ 4–5. Plaintiff's counsel conceded at oral argument that Maynard was mistakenly named as a Defendant because his name appeared on Keller's police report as the reviewing supervisor. Because Maynard was not personally involved in the events of this case, City Defendants' motion for summary judgment is granted on Plaintiff's claims against him. See

Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) (holding that § 1983 liability requires personal participation in the alleged rights deprivation).

### C. Officer Bruders

The claims against Bruders also appear to be a case of mistaken identity. With respect to the domestic disturbance incident, Congdon arrested Plaintiff and was the officer who had most of the contact with her. The Court dismissed Congdon as a defendant and granted Plaintiff leave to amend her complaint to include specific allegations against him. Plaintiff failed to amend her complaint in a timely manner despite ample opportunity to do so. Op. & Order 9, Feb. 24, 2016, ECF 34. Bruders was present at the scene but he did not participate in arresting, handcuffing, or putting Plaintiff into the patrol car. In short, Bruders had no contact with Plaintiff.

Plaintiff produces no evidence to rebut City Defendants' well-supported motion for summary judgment on this claim. Plaintiff's conclusory allegations that Bruders arrested her are insufficient to defeat summary judgment. See Sereno-Morales v. Cascade Food Inc., 819 F. Supp. 2d 1148, 1150 (D. Or. 2011) ("A nonmoving party cannot defeat summary judgment by relying on the allegations in the complaint, or with unsupported conjecture or conclusory statements."). The Court grants City Defendants' motion regarding Plaintiff's claims against Bruders.

### D. Officer Thorsen

As a preliminary matter, City Defendants argue that Plaintiff did not allege an excessive force claim against Thorsen. Plaintiff filed her Amended Complaint *pro se*. As the Ninth Circuit has instructed, however, courts must "continue to construe *pro se* filings liberally." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010). A *pro se* complaint "'must be held to less stringent standards than formal pleadings drafted by lawyers.'" Id. (quoting Erickson v. Pardus, 551 U.S.

89, 94 (2007) (per curiam)). Further, the Court previously ruled that Plaintiff's "complaint contains sufficient factual allegations to state a claim under the Fourth Amendment, and therefore her Fourth Amendment claims against . . . Thorsen continue." Op. & Order 8, Feb. 24, 2016. While the handwritten Amended Complaint does not expressly include a claim titled "excessive force" against Thorsen, it includes allegations of excessive force. Am. Compl. 4–5. Plaintiff, therefore, has a live excessive force claim against Thorsen.

(1)    False Arrest

Before Thorsen arrested Plaintiff for DUII, Carroll had informed him that Plaintiff ran a red light. Thorsen Decl. ¶ 4. Thorsen observed that Plaintiff's eyes were glassy and bloodshot. He smelled "an alcoholic beverage coming from the driver's window." Thorsen Decl. ¶ 5. Thorsen claims that Plaintiff also refused to take a SFST and warned her that such a refusal could be used against her in court. Id. at ¶¶ 5–6.

Plaintiff, by contrast, stated: "I asked Officer Thorsen if I could take a test and that I was not under any influence of anything." Harris Decl. ¶ 9. Plaintiff also stated that Thorsen would not allow her to take a SFST. Id. Viewing the evidence in the light most favorable to Plaintiff, the Court must adopt her version of the story. A jury must determine the credibility of Thorsen and Plaintiff's competing testimony and decide whether Thorsen had probable cause to arrest Plaintiff. See Anderson, 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). Therefore, the Court denies City Defendants' motion for summary judgment regarding Plaintiff's unreasonable seizure claim against Thorsen.

*(2)    Excessive Force*

Plaintiff has raised a genuine issue of material fact as to whether Thorsen used excessive force on her. Plaintiff stated that Thorsen "slammed [her] head on the trunk of the car and kicked [her] feet apart, handcuffed [her] and slammed [her] head again." Harris Decl. ¶ 9. Carroll stated that he and Thorsen "pushed Harris against the back of [his] patrol car to gain leverage." Carroll Decl. ¶ 7. Thorsen mentions only that he and Carroll handcuffed Plaintiff while she resisted. Thorsen Decl. ¶ 7.

Assuming that Thorsen did twice slam Plaintiff's head onto the trunk of the patrol car, a reasonable juror could conclude that such use of force was excessive. Neither party specifically analyzes the alleged head slams in their briefs. Plaintiff argues generally that the use of force fails the totality of the circumstances test. However, City Defendants discuss only the handcuffing and the blood draw; they fail to discuss the alleged head slams. Once more, the parties' versions of the events differ regarding a material fact and a jury will be required to determine the credibility of the Parties' evidence and decide whether Thorsen's use of force was excessive. City Defendants' motion for summary judgment on this claim is denied.

### III.   County Defendants

To make out an excessive force claim, "a pretrial detainee must show only that the force purposefully or knowingly used against him was objectively unreasonable." Kingsley v. Hendrickson, 576 U.S. ___, 135 S. Ct. 2466, 2473 (2015). The video evidence of this encounter does not include Muth and Hudson's use of the knee press on Plaintiff or the alleged spit.

After Plaintiff allegedly spit in Hudson's face, the deputies used their knees to pin Plaintiff to the floor while they handcuffed her. Plaintiff stated that Hudson grinded his knee into her back. Harris Decl. ¶ 11. Plaintiff also stated that she never spit on Hudson. Id. While the

Court may refuse to adopt the non-moving party's version of a story where it is "blatantly contradicted by the record, so that no reasonable jury could believe it[,]" in this case the crucial moments of the MCDC incident were not recorded. Scott, 550 U.S. at 380. Further, Plaintiff has raised a genuine issue of material fact as to whether the deputies' use of the knee press and Hudson's alleged grinding were excessive. The Court therefore denies County Defendants' motion for summary judgment.

## CONCLUSION

For the reasons discussed above, City Defendants' Motion for Summary Judgment [66] is granted in part. County Defendants' Motion for Summary Judgment [59] is denied.

Dated this 16 day of November, 2016.

_____
MARCO A. HERNÁNDEZ
United States District Judge