IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TERA HARRIS,

        Plaintiff,

v.

CITY OF PORTLAND POLICE
DEPARTMENT, et al.,

        Defendants.

No. 3:15-cv-00853-HZ

FINDINGS OF FACT &
CONCLUSIONS OF LAW

Tera Harris
5430 SE 119th Ave.
Portland, Oregon 97266

    Pro Se Plaintiff

1 – FINDINGS OF FACT & CONCLUSIONS OF LAW

David A. Landrum
Rebeca Plaza
Office of City Attorney
1221 SW 4th Avenue, Suite 430
Portland, Oregon 97204

      Attorney for City Defendants

Jacqueline Sadker Kamins
Katherine Von Ter Stegge
Assistant County Attorneys
501 SE Hawthorne Blvd., Suite 500
Portland, Oregon 97214

      Attorneys for County Defendants

HERNÁNDEZ, District Judge:

This case arises out of Plaintiff Tera Harris's encounters with Portland and Multnomah County law enforcement officers. Plaintiff brings claims under 42 U.S.C. § 1983 alleging Fourth Amendment violations against Portland Police Bureau ("PPB") Officer Lawrence Keller and Multnomah County Sheriff's Deputies Wendy Muth and Chris Hudson ("County Defendants").

The Court conducted a four-day bench trial in April of 2017. The following are the Court's findings of fact and conclusions of law from that trial. *See* Fed. R. Civ. P. 52(a). As explained below, the Court finds in favor of Officer Keller and County Defendants on all of Plaintiff's claims. Therefore, Defendants are not liable to Plaintiff.

## BACKGROUND[1]

Plaintiff's claims stem from two separate events, one involving Officer Keller and the other involving County Defendants.[2] First, on May 20, 2013, PPB officers were called to remove Plaintiff from a house in Northeast Portland from which she had been evicted. Plaintiff's former

---

[1] This section is not part of the Court's Findings of Fact and is included merely to assist the reader.
[2] A helpful narrative of this case, including Plaintiff's claims that did not proceed to trial, can be found in the Court's summary judgment Opinion and Order. *See* Nov. 16, 2016, O. & O., ECF 107.

landlord informed Officers Keller and Chad Steiner that Plaintiff refused to leave the house despite having ample time to remove her belongings. Officers Steiner and Keller confronted Plaintiff on the porch of the house as she was loading her belonging into a U-Haul truck. Plaintiff refused the officers' requests that she leave. When Officer Keller told Plaintiff that she was subject to arrest for trespass, she attempted to flee back into the house. Each officer took one of Plaintiff's arms and a struggle ensued. The officers handcuffed Plaintiff and Officer Keller walked her to his patrol car. Plaintiff alleges that Officer Keller used excessive force on her, causing her serious shoulder injuries.

Second, on July 14, 2014, Plaintiff was in the Multnomah County Detention Center ("MCDC") because of her arrest for driving under the influence of intoxicants. Plaintiff had been awaiting release in the open booking area at MCDC for several hours and asked Deputy Muth multiple times when she would be released. Plaintiff became frustrated and loudly complained to Deputy Muth in the presence of other inmates. Deputies Muth and Hudson ordered Plaintiff to stand so that she could be brought to an isolation cell. Plaintiff refused to stand and she pulled away from the deputies as they stood her up. Plaintiff continued to struggle by bracing her feet onto the floor and pitching her weight backward as Deputy Hudson walked her toward an isolation cell. At some point, Deputy Hudson exclaimed that Plaintiff had spit in his face. In response, Deputy Hudson brought Plaintiff to the floor. Deputies Muth and Hudson pressed their knees onto Plaintiff's back, handcuffed her, and walked her to an isolation cell. Most of this incident was captured on two video recordings. Plaintiff alleges that County Defendants used excessive force on her when they transported her to an isolation cell and pressed their knees onto her back.

//

LEGAL STANDARDS

The legal standards below are drawn from the Ninth Circuit Manual of Model Jury Instructions and modified to fit the issues and facts of this case. *See* Model Civ. Jury Instr. 9th Cir. (2007 Ed.) (last updated Mar. 2017).

**I.   42 U.S.C. § 1983 Claims Against Defendants in Their Individual Capacities – Elements and Burden of Proof[3]**

In order to prevail on her § 1983 claims against all Defendants, Plaintiff must prove each of the following elements by a preponderance of the evidence:

1. Defendants acted under color of state law; and

2. the acts of Defendants deprived Plaintiff of her particular rights under the United States Constitution.

A person acts "under color of state law" when the person acts or purports to act in the performance of official duties under any state, county, or municipal law, ordinance or regulation.

If the Court finds that Plaintiff proved each of these elements, and if the Court finds that Plaintiff has proven all the elements she is required to prove, then the Court should find for Plaintiff. If, on the other hand, the Court finds that Plaintiff failed to prove any one or more of these elements, the Court should find for Defendants.

**II.   Particular Rights — Fourth Amendment — Unreasonable Seizure of Persons — Excessive Force[4]**

In general, a seizure of a person is unreasonable under the Fourth Amendment if a police officer uses excessive force in making a lawful arrest. Therefore, in order to prove an unreasonable seizure in this case, Plaintiff must prove by a preponderance of the evidence that Officer Keller used excessive force when he arrested Plaintiff on May 20, 2013.

---

[3] *See* Model Civ. Jury Instr. 9th Cir., Instr. No. 9.3.
[4] *See* Model Civ. Jury Instr. 9th Cir., Instr. No. 9.25.

Under the Fourth Amendment, a police officer may only use such force as is "objectively reasonable" under all of the circumstances. The Court must judge the reasonableness of a particular use of force from the perspective of a reasonable officer on the scene and not with the 20/20 vision of hindsight. Although the facts known to the officer are relevant to the Court's inquiry, an officer's subjective intent or motive is not relevant to the inquiry.

In determining whether the officer used excessive force in this case, courts consider all of the circumstances known to the officer on the scene, including:

1. the nature of the crime or other circumstances known to Officer Keller at the time force was applied;

2. whether Plaintiff posed an immediate threat to the safety of officers or to others;

3. whether Plaintiff was actively resisting arrest or attempting to evade arrest by flight;

4. the amount of time the officer had to determine the type and amount of force that reasonably appeared necessary, and any changing circumstances during that period;

5. the type and amount of force used;

6. the availability of alternative methods to take Plaintiff into custody.

"Probable cause" exists when, under all of the circumstances known to Officer Keller at the time, an objectively reasonable officer would conclude that there is a fair probability that Plaintiff committed or was committing a crime. *See Graham v. Connor*, 490 U.S. 386, 396–97 (1989). "[T]he question [is] whether the totality of the circumstances justified a particular sort of search or seizure." *Tennessee v. Garner*, 471 U.S. 1, 8–9 (1985). Excessive force claims require courts to balance the "nature and quality of the individual's Fourth Amendment interests against the countervailing governmental interest at stake." *Graham*, 490 U.S. at 396 (quotation omitted).

//

### III. Particular Rights — Fourth Amendment — Pretrial Detainee's Claim of Excessive Force[5]

In order to prove that Deputies Hudson and Muth violated Plaintiff's Fourth Amendment right to be free from excessive force, Plaintiff must prove that they used excessive force when they moved her to an isolation cell. An officer may only use such force as is "objectively reasonable" under all of the circumstances. In determining whether the use of force was "objectively reasonable" in the pretrial detainee context, the Court can consider:

1. the relationship between the need for the use of force and the amount of force used;
2. the extent of Plaintiff's injuries
3. any effort made by the officers to temper or limit the amount of force;
4. the severity of the security problem at issue;
5. the threat reasonably perceived by the officer; and
6. whether Plaintiff was actively resisting.

*See Kinglsey v. Hendrickson*, 135 S. Ct. 2466, 2472–73 (2015).

## FINDINGS OF FACT

### I. May 20, 2013 Encounter with Officer Keller

When Plaintiff testified, she did not discuss what Officer Keller did on May 20, 2013. She discussed the event only in general terms and did not describe the circumstances, manner, or degree of Officer Keller's use of force. Lashawnte Harris, one of Plaintiff's daughters, testified that she saw an officer grab Plaintiff's arm and twist it, but she did not identify the officer. Multiple witnesses heard Plaintiff scream and observed that she was visibly upset after Officer Keller placed her in the back of his patrol car. Plaintiff provided no other testimony or evidence

---

[5] *See* Model Civ. Jury Instr. 9th Cir., Instr. No. 9.29.

describing the May 20, 2013 event. The remaining findings of fact regarding this event are drawn from Officer Keller's witnesses' testimony and documentary evidence.

Before Officer Keller interacted with Plaintiff, Plaintiff's former landlords, Yan Cheng Chen and Yi Pei Chen (collectively "the Chens"), informed him that Plaintiff refused to leave the house despite being given multiple days to do so. The Chens also told Officer Keller that Plaintiff had previously locked them out of the house.

Officers Steiner and Keller testified that Plaintiff became hostile toward Officer Keller as soon as he began questioning her. For example, she refused to identify herself and complained that the officers were harassing her. Once Officer Keller informed Plaintiff that she had been evicted and was subject to arrest for trespassing, she attempted to run back into the house. Plaintiff grabbed onto the door frame of the house with her left arm and tried to pull away from the Officers. Officer Keller applied a wrist lock to Plaintiff's right arm while Officer Steiner took ahold of her left arm. Plaintiff resisted their attempts to handcuff her by pulling away from them using her arms, torso, and shoulders. Both officers brought Plaintiff's arms behind her back and handcuffed her. Plaintiff continued to resist by bracing her legs onto the ground and pushing herself backward against Officer Keller as he walked her to his patrol car. Plaintiff remained in Officer Keller's car for several minutes before Officer Leslie Pintarich arrived and released her.

The next day, Plaintiff went to the emergency room complaining of right shoulder and arm pain due to her encounter with Officer Keller. Plaintiff was diagnosed with right shoulder strain and given opiates and a sling. Medical evidence adduced at trial indicated that Plaintiff suffered from a chronic shoulder injury. Testimony and medical records also showed that Plaintiff exhibited exaggerated pain behavior, sometimes in an effort to obtain pain medication in

excess of her prescription. Plaintiff underwent elective surgery on October 9, 2014, to repair a tear in her superior labrum anterior and posterior ("SLAP").

Plaintiff produced no evidence showing that Officer Keller's actions caused or exacerbated her right shoulder injuries. Further, the Court finds that any injury which she may have suffered from that event would more likely have been attributable to her acts of physical resistance—namely her attempts to pull out of the officers' grips—rather than Officer Keller's actions. Dr. Aloysius Fobe, the only medical expert who testified at trial, stated that there was nothing in Plaintiff's medical record indicating that the October 9, 2014 surgery to repair her SLAP tear was due to her encounter with Officer Keller. He also testified that the nature of Plaintiff's SLAP tear was more consistent with a chronic condition than an acute emergency. Specifically, Plaintiff's injuries were consistent with historic shoulder dislocation. There was no evidence that Officer Keller dislocated Plaintiff's shoulder. Plaintiff produced no evidence to rebut Dr. Fobe's testimony or the medical records received into evidence.

Testimony and documentary evidence also showed that Plaintiff's shoulder injury could have been caused or exacerbated by two unrelated incidents. Specifically, on May 17, 2013, Plaintiff was the victim of domestic violence and had been assaulted by her ex-husband. The record indicated that her shoulder injuries may have been caused by that incident. Furthermore, on May 30, 2013, Police were called to break up a fight between Plaintiff and her adult daughter in which Plaintiff jumped into a moving car and exchanged blows with her daughter inside of the car. This incident may have caused or contributed to Plaintiff's shoulder injuries as well.

## II.    July 14, 2014 Encounter with Deputies Muth and Hudson

The following findings of fact are based on the testimony of MCDC employees, including several deputies, as well as video evidence which captured most of the event from two

different angles. The Court finds that Plaintiff's claims that the deputies stomped on her, kicked her, grinded their knees into her, and jumped on her back are not credible. Her assertions were belied by all of the deputies' testimony, video evidence, and medical testimony and records. Plaintiff's credibility was further undermined by her prior convictions for crimes of dishonesty.

Sergeant Gary Glaze testified that open booking at MCDC is a dangerous environment for detention officers because the inmates there are unrestrained, often intoxicated, and congregated in a common area. He further testified that deputies assigned to open booking are expected to exercise heightened vigilance and to minimize disruptions by placing noncompliant inmates into isolation cells.

On July 14, 2014, Plaintiff waited to be released for several hours in the open booking area of MCDC. During that time, Plaintiff asked Deputy Muth three to five times when she was going to be released. Deputy Muth observed that Plaintiff became more agitated the longer she waited. The last time Plaintiff approached Deputy Muth, Plaintiff yelled out her demand to be immediately released. Deputy Muth ordered Plaintiff to return to her seat. Plaintiff complied, but she continued to yell at Deputy Muth and express her frustration to other inmates. Deputies Muth and Hudson approached Plaintiff and told her to stand up because they were going to place her into an isolation cell. Plaintiff refused to stand and twisted her body over the back of her chair to avoid being stood up. Deputies Phil Hubert and Howard Beeson also entered that part of the booking area and ordered the other inmates to back away from Plaintiff. Once Deputies Muth and Huson stood Plaintiff up, she continued to resist by throwing her weight backward against Deputy Hudson and bracing her feet onto the floor.

As the deputies walked Plaintiff to an isolation cell, Deputy Hudson exclaimed that Plaintiff spit in his face. Deputy Hudson took Plaintiff to the floor and Deputy Muth fell below

Plaintiff. Deputy Muth got out from under Plaintiff and both deputies pressed their knees onto Plaintiff's upper-back. Deputies Hudson and Beeson lifted Plaintiff back up to her feet. Then, Deputy Hudson handcuffed Plaintiff and all of the deputies escorted her into an isolation cell. Medical staff at MCDC evaluated Plaintiff the same day and determined that she had not suffered any injuries from the incident.

CONCLUSIONS OF LAW

I.  **Plaintiff's Excessive Force Claim Against Officer Keller**

The Court finds that Officer Keller was acting under color of state law, but he did not deprive Plaintiff of her Fourth Amendment right. Plaintiff has not shown by a preponderance of the evidence that Officer Keller's use of force was "objectively unreasonable." The Court reached this conclusion after considering each of the following *Graham* factors.

*1.  The Nature of the Crime or Other Circumstances Known to Officer Keller at the Time Force was Applied*

Officer Keller had probable cause to arrest Plaintiff for criminal trespass in the second degree under Oregon law. *See* Nov. 16, 2016, O&O at 12–13; Or. Rev. Stat. ("O.R.S.") § 164.245(1) ("A person commits the crime of trespass in the second degree if the person enters or remains unlawfully in a motor vehicle or in or upon premises."). Criminal trespass in the second degree is a class C misdemeanor. O.R.S. § 164.245(2). Plaintiff's presence at the house became a trespass once she refused the Chens' demands that she leave and remained on the premises. Officer Keller knew that Plaintiff had been given several days to remove her belongings from the house. He also knew that she previously locked herself in and the Chens out of the house. While the nature of the underlying crime is non-violent, Plaintiff escalated the situation by resisting arrest and attempting to flee. The facts known to Officer Keller at the time force was applied would lead a reasonable officer to know that force may be necessary to

physically remove Plaintiff from the house and/or prevent her from locking herself in the house. This factor supports Officer Keller's use of force.

2. ***Whether Plaintiff Posed an Immediate Threat to the Safety of Officers or to Others***

Plaintiff did not pose a threat to the officers or others. This factor weighs against Officer Keller's use of force.

3. ***Whether Plaintiff was Actively Resisting Arrest or Attempting to Evade Arrest by Flight***

Plaintiff was resisting arrest and attempting to evade arrest by flight. She attempted to pull herself into the house and out of the officers' grasps. She physically resisted the officers' attempts to handcuff her and walk her to the patrol car. This factor favors Officer Keller's use of force.

4. ***The Amount of Time the Officer Had to Determine the Type and Amount of Force That Reasonably Appeared Necessary, and Any Changing Circumstances During That Period***

Officer Keller made a split-second decision to grab Plaintiff's arm before she retreated back into the house. He had very little time to react to Plaintiff's sudden movement to flee and her attempt to pull herself inside of the house. This factor favors Officer Keller's use of force.

5. ***The Type and Amount of Force Used***

Officer Keller used a wrist lock on Plaintiff's right arm to get her to comply with the officers' efforts to arrest her. Given that Plaintiff had used her left arm to grasp the door frame and pull herself into the house; the wrist lock was proportional with her level of physical resistance. Further, the low-level of force that Officer Keller used is also supported by the facts that, at all times during the incident, Plaintiff remained standing and Officer Keller was able to walk her to his patrol car. Moreover, medical testimony and evidence adduced at trial

demonstrated that Plaintiff's right shoulder injuries were likely not attributable to Officer Keller. This factor supports Officer Keller's use of force.

6.  *The Availability of Alternative Methods to Take Plaintiff into Custody*

Officer Keller could have given Plaintiff some additional amount of time to finish moving out instead of arresting her. However, Officer Keller knew that Plaintiff had already been given ample time to complete the move-out process and that she responded with hostility to the Chens' request that she leave. Further, when Officer Keller informed Plaintiff that she was subject to arrest for trespass, she escalated the situation by attempting to flee. At that point, no alternative was available to Officer Keller other than to physically place Plaintiff into custody. Accordingly, this factor also supports Officer Keller's use of force.

On balance, the *Graham* factors support Officer Keller's use of force. Plaintiff has not carried her burden of demonstrating, by a preponderance of the evidence, that his use of force was "objectively unreasonable." Therefore, the Court concludes that Officer Keller's use of force was not excessive and he is not liable to Plaintiff.

**II. Plaintiff's Excessive Force Claims Against Deputies Muth and Hudson**

The Court finds that County Defendants were acting under color of state law when the event at issue occurred. Plaintiff has not carried her burden of proving, by a preponderance of the evidence, that Deputies Muth and Hudson used objectively unreasonable force on her when they physically brought her to an isolation cell and pressed their knees onto her back. The Court considered the following *Graham* factors modified to apply to the pretrial detainee context.

1.  *The Relationship Between the Need for the Use of Force and the Amount of Force Used*

Plaintiff's refusal to respond to the County Defendants' commands to stand up and go to an isolation cell required that they physically stand her up and move her. Plaintiff's efforts to

pull and twist away from County Defendants as they attempted to stand her further required them to exert additional force. Plaintiff pitched her bodyweight backward against Deputy Hudson and braced her legs onto the floor to prevent him from bringing her to an isolation cell. County Defendants were required to exercise force to overcome Plaintiff's resistance and walk her to an isolation cell. When Deputy Hudson brought Plaintiff to the floor, she continued to struggle. Deputies Muth and Hudson pressed their knees onto Plaintiff's back to gain control over her upper body and handcuff her. In sum, the amount of force used by County Defendants was needed to bring Plaintiff under control and separate her from the other inmates in open booking. This factor weighs in favor of County Defendants' use of force.

### 2. *The Extent of Plaintiff's Injuries*

Plaintiff was not injured by Deputies Muth and Hudson. This factor also weighs in favor of County Defendants' use of force.

### 3. *Any Effort Made by the Officers to Temper or Limit the Amount of Force*

County Defendants used force only in response to Plaintiff's resistance. County Defendants' first attempted to use verbal commands, which Plaintiff ignored. Next, County Defendants attempted to walk Plaintiff to an isolation cell without handcuffs; however, her physical resistance caused them to go to the floor. On the floor, Plaintiff continued to struggle, requiring County Defendants to use a knee press on her in order to handcuff her. This factor favors County Defendants' use of force.

### 4. *The Severity of the Security Problem at Issue*

As discussed above, the open booking environment presents a heightened risk to detention officers. Testimony elicited at trial described open booking as the most dangerous and potentially volatile location within MCDC. Detention officers in open booking are trained to

remove anyone to an isolation cell who they perceive to be disruptive. In this setting, Plaintiff was yelling at Deputy Muth. She also loudly complained to at least one other inmate at the same time. Plaintiff escalated the nature of the security problem she posed by ignoring County Defendants' requests and physically resisting their attempt to place her into an isolation cell. This factor favors County Defendants' use of force.

5. *The Threat Reasonably Perceived by the Officer*

In the open booking setting, Deputies Muth and Hudson reasonably perceived Plaintiff's disruptive behavior to pose a security threat. While Plaintiff alone might not have posed an immediate threat to anyone, she could have escalated the situation by inciting other inmates to action. Plaintiff further increased the threat she posed by resisting County Defendants' attempt to bring her to an isolation cell. This factor also favors County Defendants.

6. *Whether Plaintiff was Actively Resisting*

As discussed above, Plaintiff was actively resisting. She ignored County Defendants' verbal commands and physically resisted their efforts. This factor strongly favors County Defendants' use of force.

On balance, the *Graham* factors support Deputy Hudson and Muth's use of force. Plaintiff has not proven, by a preponderance of the evidence, that County Defendants' use of force was "objectively unreasonable." Therefore, the Court finds that County Defendants are not liable to Plaintiff for her claims against them.

//

//

//

//

CONCLUSION

The Court finds in favor of all Defendants on all of Plaintiff's claims. Regarding Plaintiff's 42 U.S.C. § 1983 excessive force claim against Officer Keller, the Court finds that he is not liable. Regarding Plaintiff's 42 U.S.C. § 1983 excessive force claims against Deputies Muth and Hudson, the Court finds that they are not liable. Defendants are directed to submit a judgment consistent with this ruling within the next ten days.

Dated this 1 day of June, 2017.

*Marco Hernández*
MARCO A. HERNÁNDEZ
United States District Judge